IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TIA A. ARMOUR** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| v. | *   Civil No.: PJM 11-2855 |
| | * |
| **BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY** | * |
| | * |
| | * |
| **Defendant.** | * |

## MEMORANDUM OPINION

Tia A. Armour has sued the Board of Education of Prince George's County (the "Board"), alleging violations of 20 U.S.C. § 1681 et seq. ("Title IX")—not Title VII—for hostile work environment based on sex and retaliation, as well as common law claims of negligent supervision and retention and intentional infliction of emotional distress.

The Board has filed a Motion to Dismiss, or in the alternative, for Summary Judgment [Docket No. 12]. Armour filed no opposition.[1] Because the Board has submitted and cited to evidence outside the four corners of the Complaint, the Court will consider the pending motion as a Motion for Summary Judgment.[2] *See* FED. R. CIV. P. 12(d); 56(a). For the reasons that follow, the Board's Motion for Summary Judgment will be **GRANTED.**

---

[1] Although Armour was initially represented by counsel, she is now instead proceeding *pro se*. Upon the withdrawal of counsel, on March 2, 2012, the Court alerted Armour to the pendency of the Board's Motion and gave her an additional 60 days to respond, warning that a failure to do so would lead the Court to treat the Motion as unopposed. Despite this lengthy extension, plus three additional months beyond that, Armour has filed no response.

[2] The Board has submitted various pieces of documentary evidence in support of its Motion for Summary Judgment, including personnel documents, formal grievances and reports, state court litigation documents, and assorted correspondence. Armour has submitted only her Amended Complaint, with no supporting documentation. Thus, the Court's recitation of the factual background is drawn exclusively from the Board's submitted documentary evidence.

1

I.

On January 20, 2011, Armour, who had been a Prince George's County Public School employee since April 2008, began working at John Hanson Montessori School in the vice principal's office.[3] On February 16, 2011, she filed a Discrimination or Harassment Incident Report pursuant to Administrative Procedure 4170 (the "Report"), alleging that the vice principal, Linda Burgess, had generally harassed her and created an intimidating and hostile work environment.

In the Report, Armour complained of three specific incidents that had supposedly occurred in the preceding days. First, on February 9, Burgess allegedly witnessed Armour attempting to control a young student who was exhibiting major disruptive behavior, had urinated on himself, and was damaging property. Instead of offering to help or taking charge as the administrator, however, Burgess exited the room, leaving Armour to deal with the situation alone. Second, on February 15, Burgess allegedly assigned Armour to cover "in-school suspension" without providing the standard documentation, which would have alerted Armour to the assigned students' disciplinary issues. Armour complained that Burgess "humiliated" her by interrupting her when she was instructing the students on the in-school suspension procedures with contradictory (and incorrect) information. Third, on February 16, after Armour sent an email to Burgess detailing her complaints and alerting her that she would be filing a formal grievance, Burgess allegedly approached Armour in the media center and ordered her to cover lunch duty. After Armour told Burgess this would mean she had no time to eat lunch herself, Burgess cornered her in the hallway and insisted that she do lunch duty. In addition to

---

[3] This new assignment followed Armour's return from an extended sick leave of more than two years and her subsequent filing of an EEOC complaint against the Board for discrimination in violation of the Americans with Disabilities Act.

identifying these three distinct incidents, the Report also complained of various examples of generalized "administrator to teacher bullying," including that Burgess set her up to have problems with parents and school officials, complained to her co-workers about her and to her about her co-workers, and reprimanded a colleague in front of her with the threat that she would be dealt with the same way.

In addition to the Report, Armour also filed two related workers compensation reports. The first report claimed that on February 9, 2011, a student threw a paper weight that hit the left side of Armour's head, causing unspecified injuries. The second report claimed that on February 16, 2011, Burgess used the heel of her hand to slam Armour's wrist into a table, causing unspecified injuries.

On February 17, 2011, one day after she filed the Report, Armour met with Pamela Harris, the Equity Assurance Officer, to discuss it. Armour told Harris that Burgess had threatened her by saying "let me go and get my piece so I can end you;" Armour understood "piece" to mean "gun" and did not feel safe going back into the building. During the meeting, Armour confirmed that Sherra Chapelle, the principal, was usually supportive, but that she was not in the building when Burgess threatened her. Armour told Harris that she had alerted school security of the incident and had agreed to return to school after they assured her that it was safe. During the meeting, Armour and Harris concluded that the allegations did not present a cause of action under Administrative Procedure 4170 or Title VII, and Harris agreed to withdraw her Report. They also discussed that Armour would continue working with Helen Coley, the Area Assistant Superintendent, and the staff in the Labor Relations Office to address her safety concerns.

On February 28, 2011, Armour obtained a Temporary Peace Order against Burgess in the Prince George's County District Court. On March 7, 2011, she voluntarily dismissed the Temporary Peace Order.

On September 12, 2011, Armour was reassigned to teach second grade at the J. Frank Dent Elementary School. On September 19, Armour sent an email to Elisabeth Davis, a compliance officer, alleging that the principal there, Theresa Ware, was discriminating against her because of her disability and was attempting to "railroad" her and set her up because of her previous complaints of violations of the American with Disabilities Act. Davis responded by sending her a report to fill out and offering to meet with her to discuss her allegations. That same day, Armour filed a complaint in Prince George's County District Court, alleging that Ware verbally and physically attacked her, told her to "get her crippled ass out of [her] school," and threatened to "make her pay for going to the D.A. on Linda Burgess." The court issued an Interim Peace Order against Ware, which was dismissed the next day when Armour failed to appear.

Armour filed the instant lawsuit on October 5, 2011.[4] In her Amended Complaint, Armour asserts for the first time that Burgess's harassment was sexual in nature. Specifically, Armour alleges that Burgess made sexual contact, which Armour reported as sexual harassment to Chapelle, Coley, and Harris. Armour alleges that Chappelle responded only by saying that Burgess should "stay in her lane," and that Coley and Harris failed to respond at all. Armour also adds allegations of sexual harassment and assault to her account of the incidents that allegedly occurred on February 9 and 16, none of which appear in her Report filed on

---

[4] No Title VII claim was filed with the Equal Employment Opportunity Commission regarding these incidents, which would explain why the suit has been filed pursuant to Title IX, which has no requirement of exhaustion of administrative remedies.

February 16 or in other documents in the record. Specifically, Armour alleges that on February 9, when she was controlling the disruptive child, Burgess conditioned an offer of help on a sexual proposition. Further, she alleges that on February 16, when Burgess approached her in the media room, Burgess touched her breast, inner thigh, and vaginal area. When Armour told her to stop, Burgess slammed her hand into Armour's wrist. Then, when Burgess cornered her in the hallway, Burgess sexually propositioned Armour again, and when Armour refused, Burgess threatened to get her "piece" and end her. Finally, the Amended Complaint alleges for the first time that Ware's threats referenced Armour's claims of sexual harassment against Burgess.

On October 26, 2011, Armour submitted a written resignation, citing her medical condition as the reason.

## II.

Under Rule 56(a), summary judgment is appropriate when there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting FED. R. CIV. P. 56(e)). In considering a motion for summary judgment, the Court must "draw all justifiable inferences in favor of the nonmoving party." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson*, 477 U.S. at 255). The court must, however, also abide by the "affirmative obligation

of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp*, 477 U.S. at 323-24).

Summary judgment is appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993); *see also* FED. R. CIV. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."). "[T]he court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Custer*, 12 F.3d at 416; *see also Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 409 n.8 (4th Cir. 2010).

### III.

Armour asserts claims of sex-based hostile work environment and retaliation under Title IX, which provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX creates an implied private right of action, which "extends to employment discrimination on the basis of gender by educational institutions receiving federal funds." *Preston v. Com. of*

*Va. ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206 (4th Cir. 1994) (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979); *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512 (1982)). In evaluating a sex discrimination claim under Title IX, courts look to Title VII jurisprudence for guidance. *See Jennings v. Univ. of North Carolina*, 482 F.3d 686, 695 (4th Cir. 2007).

The threshold issue for any Title IX claim is whether there has been discrimination based on sex. A claim of hostile work environment is only actionable under Title IX if the alleged hostility amounts to sex-based discrimination. *See Jennings*, 482 F.3d at 695; *see also Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998) ("[T]he critical issue [in a sexual harassment claim under Title VII] is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."). Similarly, a claim of retaliation under Title IX only lies where the claimant suffers "retaliation based on the filing of a complaint of gender discrimination." *Preston*, 31 F.3d at 206 n.2.

No evidence in the record supports Armour's claim of hostile work environment based on sex. To establish this claim, Armour would have to present evidence that (1) she was at an educational institution receiving federal funds, (2) she was subjected to harassment *based on her sex*, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment, and (4) there is a basis for imputing liability to the Board. *See Jennings*, 482 F.3d at 695; *see also Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331 (4th Cir. 2011) (setting forth criteria for establishing hostile work environment based on sex under Title VII). Despite ample contemporaneous documentation of Burgess's offending conduct, nowhere in the record, except in the Amended Complaint, is there any mention of discrimination based on sex. It is particularly striking that Armour reported, in detail, the offending nature of the incidents that

allegedly occurred on February 9 and 16 but included none of the charges of sexual harassment and assault that for the first time surface in her Amended Complaint.[5] While the evidence in the record does suggest that Burgess may have bullied, intimidated, and physically threatened and assaulted Armour, all of which might support causes of action other than Title IX (or Title VII claims), nothing in the record warrants an inference that Burgess created a hostile work environment or otherwise discriminated against Armour on the basis of her sex under Title IX.

Because there is no evidence that Armour complained of (or even suffered from) any discrimination based on sex, she is unable to sustain a claim of retaliation under Title IX.[6] *Cf. Jackson*, 544 U.S. at 174 ("[W]hen a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX.") (emphasis in original); *see also Preston*, 31 F.3d at 206 n.2.

Armour's common-law claims fare no better.

To establish a prima facie case for intentional infliction of emotional distress, a plaintiff must demonstrate intentional or reckless conduct that was extreme and outrageous as well as a causal connection to severe emotional distress. *See Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611, 614 (1977). "[T]he tort is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 670, 607 A.2d 8, 11 (1992). "[W]orkplace harassment . . . almost never rises to the level of outrageousness, and almost never results in such severely debilitating

---

[5] The absolutely critical and dispositive legal proposition in this case is that allegations set forth in the pleadings are insufficient to create a genuine dispute of material fact, without citation to "particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A). Since Armour's only submission is her Amended Complaint (the original Complaint having been superceded), she fails to satisfy this requirement.

[6] Indeed, the documentation relating to Ware's allegedly retaliatory actions refers only to discrimination based on disability and retaliation for making claims under the Americans with Disabilities Act.

emotional trauma, as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional distress under Maryland law." *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002). Burgess's conduct, as reflected in the record, was not so extreme and outrageous as to satisfy the high threshold required by Maryland law. Moreover, there is no evidence that Armour suffered any severe and debilitating emotional distress. Again, the Court has nothing from Armour but her Amended Complaint, which, as a matter of law, cannot sustain her factual contentions. Thus, this claim fails.

To establish a claim for negligent hiring or retention, a plaintiff must show that he suffered from a tortious act and that the employer of the individual who committed the tort acted negligently towards the plaintiff (i.e. owed and breached a duty thereby causing harm) in hiring or retaining that individual. *See Horridge v. St. Mary's Cnty. Dept. of Soc. Servs.*, 382 Md. 170, 180, 854 A.2d 1232, 1237 (2004) (citing *Norfolk & Western Railroad Co. v. Hoover*, 79 Md. 253, 262, 29 A. 994, 995 (1894)). Because Armour presents no evidence establishing a claim for any underlying tortious act, let alone any negligence on the Board's part in hiring or retaining any employee, this claim also must fail.

### IV.

For the foregoing reasons, the Board's Motion for Summary Judgment [Docket No. 12] is **GRANTED**.

A separate Order will **ISSUE**.

                                                          /s/
                                     **PETER J. MESSITTE**
                             **UNITED STATES DISTRICT JUDGE**

**August 3, 2012**